UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

KENNETH E. SHORTT,                          :
                                            :
                        Plaintiff,          :
                                            :          **OPINION AND ORDER**
        - against -                         :
                                            :          10 Civ. 2237 (ER)
CONGREGATION KTI,                           :
                                            :
                        Defendant.          :

————————————————————————x

Ramos, D.J.:

    *Pro Se* Plaintiff, Kenneth E. Shortt ("Plaintiff" or "Shortt"), commenced this action

against Congregation KTI ("Defendant" or "KTI") on February 23, 2010, alleging discrimination

on the basis of race, color and age in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 42

U.S.C. § 621 *et seq.*, New York State Human Rights Law ("NYSHDR"), N.Y. Exec. Law § 290

*et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101

*et seq.* Compl., Doc. 2, at 1-3. The discriminatory conduct alleged by Plaintiff is Defendant's

failure to hire him for a custodial position in November 2007. Plaintiff is an African-American

male and was approximately sixty-four years old at the time of the alleged discriminatory

conduct. Def.'s 56.1 Stmt. ¶ 12. [1]

    Before the Court is Defendant's Motion for Summary Judgment seeking dismissal of

Plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 56. Doc. 19; *see* Def.'s Mem. Law

Supp. Mot. Summ. Judg. ("Def.'s Mem. L.") 11, Doc. 21. For the reasons set forth below,

Defendant's Motion is GRANTED.

---

[1] Citations to "Def.'s 56.1 Stmt." refer to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1.
Doc. 22.

## I. Background

The following facts are undisputed except where otherwise noted. [2]

### A.  Advertising of KTI's Custodial Position

Defendant KTI is a synagogue in Port Chester, New York.  KTI also manages two schools:  a religious school and an early childhood education program.  Def.'s 56.1 Stmt. ¶ 1.  In October 2007, KTI began a search for a custodial assistant.  *Id.* ¶ 2.  KTI placed advertisements for the position in several local newspapers, including The Journal News, *id.* ¶ 3, which ran KTI's job posting on October 31, November 2, and November 4, 2007.  *Id.* ¶ 4.  On November 1, 2007, Rita Unger, KTI's Synagogue Administrator ("Unger"), and Ed Mulligan, KTI's Head

---

[2] Pursuant to Local Rule 56.1(c), each factual statement set forth in Defendant's Rule 56.1 Statement "will be deemed to be admitted for purposes of this motion unless specifically controverted by a correspondingly numbered paragraph" in Plaintiff's Response to the Rule 56.1 Statement.  Where possible, the Court has relied on the undisputed facts in Defendant's 56.1 Statement; however, direct citations to the record have also been used where relevant facts were not included in either of the parties' Rule 56.1 submissions.

In most instances, Plaintiff neither admits nor denies a particular fact, but instead responds with equivocal statements such as:  "I have no way of knowing if the above is factual" or "I do not know the above as a fact," Pl.'s 56.1 Response ¶¶ 8-10, 18-19; "How would anyone know for sure that my age or race was not considered[?]," *id.* ¶ 23; "It is contradictory for Ms. Unger and Mr. Mulligan to state that they were impressed with my skill set, and for Ms. Unger to later say that I might not be happy working in a menial job of custodial assistant," *id.* ¶ 16; and in response to Defendant's statements regarding Dunne's predecessors, Plaintiff asserts that such information is irrelevant, as he believes that "[o]nly Brian Dunne is relevant to this case if he is a real person."  *Id.* ¶¶ 24-26.  "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011); *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with conclusory assertions or legal arguments); *Buckman v. Calyon Secs.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Geoghan v. Long Island R.R.*, 06 Civ. 1435 (CLP), 2009 WL 982451, at *5-6 (E.D.N.Y. Apr. 9, 2009) ("Since plaintiff's response does not dispute the accuracy of the assertion, the assertion is deemed to be admitted by plaintiff for purposes of this motion.").

Accordingly, in analyzing the instant motion, the Court has disregarded averments in Plaintiff's 56.1 Response that are not denials of the specific facts asserted by Defendant, not supported by citations to admissible evidence in the record, contradicted by other admissible evidence in the record, or that are improper legal arguments.

Custodian ("Mulligan"), began interviewing candidates for the custodial assistant position.  *Id.* ¶ 5.

        Plaintiff learned of the job posting through The Journal News and applied for the position by sending his resume via fax on November 5, 2007.  Heiser Aff., Ex. A (Hearing Transcript before the New York State Division of Human Rights ("SDHR") on January 5, 2009), 10:10-25.[3] According to Unger, Plaintiff was the only candidate to submit a resume for the position.  *Id.* 91:24-25 – 92:1-4.  Plaintiff's resume described his experience in electrical work, tile work, masonry, sheet metal, fabricating parts and fixing machinery.  Def.'s 56.1 Stmt. ¶ 13.  Plaintiff's date of birth was not provided on his resume.  Compl., at 6.  Further, Plaintiff's resume did not list any dates of employment, so Plaintiff's age could not be discerned from the document.  *Id.*; Ex. A, 13:17-19.

        After Plaintiff faxed his resume to KTI, Mulligan contacted Plaintiff and scheduled an interview for that same day, November 5, 2007.  Def.'s 56.1 Stmt. ¶ 11.  According to Mulligan, Defendant decided to interview the Plaintiff "[b]ecause up until that point, until he called, we did not have any viable candidates."  Ex. A, 102:15-17.  As of November 5, 2007, KTI had interviewed eight to ten candidates for the custodial assistant position and had determined that none of these individuals were suitable for the job.  Def.'s 56.1 Stmt. ¶ 8.

### B.  Plaintiff's Interview

        Plaintiff's interview was conducted by Unger and Mulligan and lasted approximately twenty to thirty minutes.  Ex. A, 74:8-11, 97:22-23.  Plaintiff provided Unger and Mulligan with his business card, which noted that Plaintiff is qualified in carpentry, plumbing, electrical work,

---

[3] "Heiser Aff.." refers to the Affidavit of David M. Heiser in Support of Defendant's Motion for Summary Judgment.  Doc. 20.  All subsequent citations to the Exhibits attached to the Affidavit of David M. Heiser are referenced herein as "Ex.___."

painting, tiling, plastering, masonry, wall paneling and sheetrock.  Def.'s 56.1 Stmt. ¶ 13.  Unger and Mulligan then described the duties of the custodial assistant position as including light painting, sweeping, mopping, distributing mail, and rearranging desks in the classrooms.  *Id*. ¶ 15.  Further, Unger and Mulligan explained that when KTI required electrical or plumbing work, they would generally hire outside contractors.  *Id*.  Unger, Mulligan and Plaintiff next discussed Plaintiff's experience and skills.  Ex. A, 74:17-20.

During the interview, Plaintiff volunteered his age to Unger and Mulligan because, according to Plaintiff, "they knew that [he] was retired."  *Id*. 13:17-20, 46:20-23.  Unger and Mulligan were admittedly "impressed" with Plaintiff's experience, however, Unger was concerned that Plaintiff might be dissatisfied working in the "menial job of custodial assistant" because he appeared to be overqualified for the position.  Def.'s 56.1 Stmt. ¶ 16.  At the conclusion of the interview, Unger and Mulligan informed Plaintiff that KTI would interview additional candidates and that they would reach a decision shortly thereafter.  *Id*. ¶ 17.  Plaintiff admits that he had no reason to believe that he was definitely going to receive a job offer from KTI.  Ex. A, 49:2-4.

KTI did not provide a formal job application to any candidates for the custodial position during their interviews, including Plaintiff, because it was KTI's practice to require completion of an application form only after an individual had been hired.  Def.'s 56.1 Stmt. ¶¶ 9-10.[4]

### C.  KTI's Custodian Selection

On November 6, 2007, the day after Plaintiff's interview, Unger and Mulligan interviewed Brian Dunne ("Dunne") for the custodial assistant position.  Dunne is a white male

---

[4] Plaintiff's Response to KTI's formal application requirement merely states that he does not know if this is a true practice.  Pl.'s 56.1 Response ¶¶ 9-10.  Plaintiff's 56.1 Response does not dispute the facts set forth in Defendant's 56.1 Statement.  *See supra* note 2.

who was in his early fifties at the time of the interview.  *Id.* ¶ 18; *see also* Ex. A, 94:3-4.  Dunne had previously worked as a custodian for approximately ten years and spent five of those years working at a religious school affiliated with a church.  Def.'s 56.1 Stmt. ¶ 19.  Based on Dunne's prior work experience, Unger and Mulligan considered him to be an "ideal match" for the position.  *Id.* ¶ 20;[5] Ex. A, 76:20-24.  Furthermore, Unger testified that she and Mulligan "felt [that Dunne] knew the workings of a religious school and [that] he would have to be accountable to the Rabbi, to the administrative staff, to the teachers, [and] congregants.  He was familiar with that kind of a setting and we felt he would be a great match for us."  Ex. A, 77:13-20; *see also id.* 99:21-25.  According to Mulligan, after he and Unger had interviewed Dunne, they determined that as between Plaintiff and Dunne, Dunne had "qualifications more suitable to the job."  *Id.* 103:17-25 – 104:1-12.

On November 9, 2007, Unger called Plaintiff and informed him that they were very impressed with him but they could not offer him a job.  Unger told Plaintiff that he came in a "high second," meaning that he was KTI's second choice for the position.  *Id.* ¶ 21.[6]  Plaintiff was "very insulted" by Unger's use of the expression "high second," *id.* ¶ 22, as he considered

---

[5] Plaintiff's Response states, "The above is false.  Mr. Dunne has no work history . . . Mr. Heiser could not produce any papers on Brian Dunne proving that he is a real person.  That is <u>PROBABLE CAUSE</u>.  Brian Dunne's predecessors have been mentioned repeatedly with details about them.  They have nothing to do with this case.  Only Brian Dunne is relevant to this case.  Everything about Mr. Dunne is [hearsay]."  Pl.'s 56.1 Response ¶ 20 (emphasis in original).  Plaintiff's response is not based on personal knowledge or on otherwise admissible evidence.  In addition, it improperly interjects a legal argument and immaterial facts.  Accordingly, this response will be disregarded.  *See supra* note 2.

[6] Plaintiff strongly disputes the term "high second" and states in his Rule 56.1 Response, "A terminology was used to define me that I never heard of before or couldn't find in the dictionary or any other reference material.  What was Ms. Unger making an allusion to in a roundabout way with a statement that appears on the surface to be innocent?"  Pl.'s 56.1 Response ¶ 21.  This response will also be disregarded, as it is not an actual denial of the fact asserted by Defendant.

the job to be a "NO BRAINER" and thought that "[a] Neanderthal Man could perform those tasks." Compl., at 15 (emphasis in original).[7]

According to Unger and Mulligan, they had not discussed or considered Plaintiff's age or race when evaluating candidates for the custodial assistant position. Def.'s 56.1 Stmt. ¶ 23. Defendant also asserts that Dunne's three immediate predecessors as custodial assistant were two African-American males and a Hispanic male. The Hispanic male worked for KTI for sixteen years until he was approximately seventy years old. *Id*. ¶ 24; Ex. A, 93:13-16. Furthermore, Mulligan's predecessor as head custodian was African-American and retired in 2002 at approximately age sixty-two or sixty-five after working for KTI for twenty-five years. Def.'s 56.1 Stmt. ¶ 25.

### D. Administrative Proceedings

A week after learning that he did not receive the custodial assistant job, Plaintiff contacted KTI to give notice that he was going to file a discrimination complaint. *Id*. ¶ 22. On November 27, 2007, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"), alleging discrimination on the basis of race, color and age. *Id*. ¶ 27.[8]

On March 8, 2008, after reviewing Plaintiff's complaint, the SDHR determined that there was probable cause to believe that Defendant had engaged in the unlawful discriminatory practice complained of by Plaintiff. Compl., at 22. The matter was then referred to an

---

[7] In a letter sent to the SDHR, dated December 18, 2007, Plaintiff notes that as part of his duties at the New York City Transit Authority, he "cleaned sinks, urinals, toilets and floors in bathrooms." Compl., at 20-21. However, on the resume which Plaintiff provided to KTI, these tasks are absent from the description of his duties with the New York City Transit Authority. *Id*. at 6. Furthermore, undisputed testimony of Unger and Mulligan at the SDHR hearing indicates that Plaintiff did not describe any prior janitorial experience during the interview at KTI. Ex. A, 75:10-12, 99:5-7.

[8] The Complaint is dated November 16, 2007; however, it was received at the office of the SDHR on November 27, 2007 and filed on that date. Ex. A, 6:10-17.

Administrative Law Judge ("ALJ") to determine whether Defendant's motives were discriminatory in nature.  *Id*. at 25.

A hearing before an ALJ was held on January 5, 2009.  Def.'s 56.1 Stmt. ¶ 29.  Plaintiff was represented by counsel for the SDHR.  Ex. A, 4:2-4.  Plaintiff testified at the hearing and had the opportunity to cross-examine witnesses.  *Id*. 1-113.  During Plaintiff's direct examination, the SDHR attorney asked Plaintiff why he felt that he had been discriminated against based on his age and color, and Plaintiff responded:

> I can't take osmosis into a Court of law.  Just like women ha[ve] their intuition, you can't take that into a Court of law.  What I am saying is this is how I felt due to the [fact that the] job was broken down to me.  And like I said, when Ms. Unger called me and said I came in a high second, that was insulting.  I have thirty-five years [of] experience and I came in a high second, so why are they calling me[?]

*Id*. 17:20-25 – 18:1-11.  Later, in response to an additional question asking why he felt he was discriminated against based on his race, Plaintiff instead discussed his age discrimination claim and responded:

> When I got to the meeting that Monday on November the 5th, I am taking it in accordance—okay, my resume had no dates on it.  When I got there to meet— when the job was dropped down, I was expecting more than to do like a menial job . . . My age, they knew my age because I volunteered that . . . And I took this all in accordance when I was denied the job.  It came in when they said I was a high second.  I was insulted due to that.

*Id*. 17:8-19.  These statements led to the following series of questions on direct examination of the Plaintiff:

> Q:  Why do you feel that you were discriminated against because of your age at the time you filed your complaint?
>
> A:  Like I said, my resume has no dates on it because I have experience before— it's there but you really got to have some substance.  That happened many times. You have to have some substance.

…

Q:   Why did you feel that you had substance for your age discrimination complaint?

A:  Well, because jobs that I fax or I get a call or e-mail, and there are no dates when I send my resume.  When they see me it is another story . . . Sometimes if I have the date on there, and it looks like I am too old for the job, and they will go by me.  If I omitted it, I would be called.  Even if I don't get the job, they see me too.

*Id.* 18:12-25 – 19:1-9.

On March 16, 2009, the ALJ issued Recommended Findings of Fact, Opinion[,] Decision, and Order that Plaintiff's complaint be dismissed, because KTI had articulated a legitimate, non-discriminatory reason for its decision to hire Dunne, over Plaintiff, for the custodial position, and there was no evidence of discrimination.  Def.'s 56.1 Stmt. ¶ 30; Ex. G at 5-6.  Specifically, the ALJ found:

Complainant has not offered anything that would tie his race or age to Respondent's action.  The only reference to Complainant's age, or anyone's age, was made by Complainant, who volunteered the information himself.  That fact does not prove Complainant's claim and, given that there is no evidence through which one can find that Respondent was motivated by discrimination based upon age or race, Complainant cannot establish that Respondent's stated reason for hiring Dunne was pretextual.

Ex. G at 5-6.

On May 4, 2009, SDHR Commissioner Galen D. Kirkland issued an Order adopting the ALJ's Recommended Order as the Final Order of the SDHR.  Def.'s 56.1 Stmt. ¶ 31; Ex. H at 1-2.  The SDHR Commissioner's Order contained information advising the parties of their right to appeal the decision to the New York State Supreme Court.  Def.'s 56.1 Stmt. ¶ 31.  Plaintiff did not appeal the SDHR Commissioner's Order.  *Id.* ¶ 32.  On or about November 23, 2009, the

Equal Employment Opportunity Commission ("EEOC") adopted the findings of the SDHR and issued Plaintiff a Right to Sue letter.  Compl., at 5.

## II. Legal Standard Governing Motions for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Osberg v. Foot Locker, Inc.*, --- F. Supp. 2d ----, 2012 WL 6062542, at *4 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B).  The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support

each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322).  In that situation, there can be no "genuine dispute as to any material fact," since a failure of proof on an essential element of the

non-moving party's case "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

**B.  Additional Summary Judgment Standards for Employment Discrimination Cases**

While courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "'summary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.,* 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Thus, the Supreme Court has "reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524 (1993)).  Accordingly, "[e]ven in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

### C.  Local Rule 56.1

Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment pursuant to Fed. R. Civ. P. 56, must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local R. 56.1(a).  In answering a motion for summary judgment, litigants in this District are required to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support its position by citing to admissible evidence in the record.  Local Rule 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  If the moving party seeks summary judgment against a *pro se* litigant, it is also required to notify the *pro se* litigant of the requirements of Fed. R. Civ. P. 56 and Local Civil Rule 56.1.  Local R. 56.2.  Once served with a statement pursuant to Local Rule 56.2, "[*p*]*ro se* litigants are then not excused from meeting the requirements of Local Rule 56.1."  *Wali v. One Source Co.,* 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear Co. v. 1-800-BEARGRAM Co.,* 373 F.3d 241, 246 (2d Cir. 2004)).

Pursuant to Local Rule 56.1(c), each factual statement set forth in the moving party's Rule 56.1 statement "will be deemed to be admitted for purposes of this motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."), *cert. denied*, 130 S. Ct. 3277 (2010).  However, "where a *pro se* plaintiff fails

to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001)).

Here, Defendant filed and served a statement pursuant to Local Rule 56.1, setting forth the undisputed material facts with citations to admissible evidence in the record.  Doc. 22.  In addition, Defendant duly served and filed a statement pursuant to Local Rule 56.2, apprising Plaintiff of the potential consequences of not responding to the motion as required by the Local Rules.  Doc. 23.  In opposing the instant motion, Plaintiff filed a response to Defendant's Rule 56.1 Statement that contains statements corresponding to the paragraphs in Defendants' Rule 56.1 Statement; however, a majority of Plaintiff's responses neither admit nor deny the particular facts and consist of the following:  (1) Plaintiff claims he does not have any basis upon which to admit or deny a fact set forth by Defendant, *e.g.*, Pl.'s 56.1 Response ¶¶ 9-10, 18-19; (2) Plaintiff responds with equivocal statements such as, "How would anyone know for sure that my age or race was not considered[?]," *id*. ¶ 23, and "[N]o details are given about Brian Dunne.  Is Mr. Dunne real?, *id*. ¶¶ 24-26, 28 (emphasis in original); or (3) Plaintiff argues that the facts set forth by Defendant are irrelevant.  *Id.*  Such responses are impermissible under Local Rule 56.1.  *See, e.g.*, *Buckman v. Calyon Secs.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("Plaintiff had ample opportunity during discovery to determine the accuracy of the relevant facts and may not now claim that he lacks sufficient information.").  Plaintiff did not submit a memorandum of law, even after the Court granted Plaintiff five extensions of time to file his opposition.[9]

---

[9] On March 2, 2012, the Court held a status conference, at which both parties were present, and set the following briefing schedule for Defendant's motion for summary judgment: (1) moving papers due April 2, 2012; (2) opposition papers due May 17, 2012; and (3) reply papers due May 31, 2012.

In addressing the present motion, the Court is mindful that Plaintiff is proceeding *pro se* and that his submissions are "held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam) (internal quotation marks omitted) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y. City Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that same principles apply to briefs and opposition papers filed by *pro se* litigants (citing *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003))). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Therefore, because Plaintiff is proceeding *pro se*, this Court has endeavored to discern from the record if there is any evidentiary support for the assertions contained in his Rule 56.1 Response, and to determine if there are any other material issues of fact based on the evidence in the record. *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010).

---

On May 10, 2012, Plaintiff requested an extension of time to file his opposition. The Court extended Plaintiff's deadline to June 29, 2012. Doc. 26. On June 28, Plaintiff requested a second extension and the Court extended the deadline to July 20, 2012. Doc. 28. On July 13, 2012, Plaintiff submitted his third request for an extension and requested that a new deadline be set for July 23, 2012. The Court gave the Plaintiff until July 27, 2012 to file his opposition papers. Doc. 31. On July 26, 2012, Plaintiff made his fourth request for an extension and the Court granted the extension until August 10, 2012. Doc. 32 (The letter is dated "April 26, 2012," however, it is clear that the Plaintiff meant to write July 26, 2012). Then, on August 13, 2012, Plaintiff made his fifth request for an extension and the Court granted an extension until August 21, 2012. Doc. 33. The Court did not receive the Plaintiff's opposition papers on August 21, 2012. The following day, August 22, 2012, Plaintiff faxed the Court a copy of his opposition papers.

### III. Legal Standard for Claims under Title VII and the ADEA

All of Plaintiff's employment discrimination claims are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[10]   Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of discrimination.   411 U.S. at 802.   In order to do so, a plaintiff must show that:  (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).

The Second Circuit has explained that a plaintiff's burden at this stage is *de minimis*. *Abdu-Brisson,* 239 F.3d at 467.   Nonetheless, in order to state a *prima facie* case of discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd,* 51 F. App'x 55 (2d Cir. 2002), and cannot meet its burden through reliance on unsupported assertions, *Goenaga,* 51 F.3d at 18, or "[s]tatements that are devoid of any specifics, but replete with conclusions."  *Griffin v. Ambika Corp.,* 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000).

---

[10] Courts apply the same legal framework to analyze claims under Title VII, the ADEA, and the NYSHRL.  *See, e.g.*, *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (applying *McDonnell Douglas* framework to Title VII, ADEA and NYSHRL claims); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (holding that, even after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), this Circuit continues to apply the *McDonnell Douglas* burden-shifting framework to ADEA claims).  Because discrimination claims on the basis of age and race under the NYSHRL are analyzed under the same standards as claims brought under the ADEA and Title VII respectively, the Court has analyzed all of Plaintiff's discrimination claims together.  *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 n.3 (2d Cir. 2007), *abrogated in part on other grounds by Gross*, 557 U.S. 167 (2009); *see also Torres v. Pisano,* 116 F.3d 625, 629 n.1 (2d Cir. 1997).

If a plaintiff successfully presents a *prima facie* case, a presumption of discrimination arises, which the defendant must then rebut by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in the plaintiff's *prima facie* case. *Abdu-Brisson,* 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  The defendant's burden at this step of the analysis is also "light."  *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998).  "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  *Id.*  The Supreme Court has explained that defendant's burden "is one of production, not persuasion; [and] it 'can involve no credibility assessment.'"  *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509).  If the defendant satisfies its burden at the second step of the test, "the presumption raised by the *prima facie* case is rebutted" and "drops from the case," *Burdine*, 450 U.S. at 255, 255 n.10, "and the sole remaining issue [is] discrimination *vel non*."  *Reeves*, 530 U.S. at 143 (internal quotation marks omitted) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)).

Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's articulated reason for the adverse employment action is merely a pretext for actual discrimination.  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 380-81 (2d Cir. 2003).  Under Title VII, a plaintiff can establish an unlawful employment practice by demonstrating that race or color was "*a motivating factor* for an[] employment practice, even though other factors also motivated the practice."  42 U.S.C.

§ 2000e–2(m) (emphasis added).  Under the ADEA, the third step of the test is different.[11]  In addition to showing that the defendant discriminated against him on the basis of age, the plaintiff must also show that age discrimination was a "but-for" cause of the adverse action, and not merely *one* of the motivating factors.  *Gross*, 557 U.S. at 177, 180.

It is important to note, that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Reeves*, 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 253).  In determining whether the plaintiff has satisfied this burden, the Court must consider the sum of all evidence of discrimination in its totality, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer."  *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

## IV. Plaintiff's Discrimination Claims

### A. *Prima Facie* Case of Discrimination

The elements of a *prima facie* case are not in contention.  It is undisputed that Plaintiff was a member of a protected class under Title VII and the ADEA, because he is African-American and he was approximately sixty-four years old when he suffered an adverse employment decision—not being chosen for the custodial assistant position in November 2007.  *Ruiz*, 609 F.3d at 491-92.

---

[11] As explained in *Mattera v. JPMorgan Chase Corp.*, the third step of the *McDonnell Douglas* test for ADEA claims has changed as a result of the Supreme Court's holding in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), which set forth the more stringent "but-for" standard articulated above.  740 F. Supp. 2d 561, 571 n.8 (S.D.N.Y. 2010) (citing *Gorzynski*, 596 F.3d at 106-07).

It is also clear from the record that Plaintiff was minimally qualified for the position, because he was selected for an interview based on his resume. *See* Def.'s 56.1 Stmt. ¶ 11. In addition, Defendant was admittedly "impressed" by Plaintiff's qualifications and ranked him a "high second" among the applicants. *Id*. ¶¶ 16, 21. This is all that is required at the *prima facie* stage. *Sista v. CDS Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006).

For claims brought under Title VII, in order to raise an inference of discrimination at the *prima facie* stage, it is typically sufficient for a plaintiff to show that the position was filled by someone outside of his protected class. *Morris v. Ales Group USA, Inc.*, No. 04 Civ. 8239 (PAC) (THK), 2007 WL 1893729, at *9 (S.D.N.Y. June 29, 2007) (citing *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996)). For claims brought under the ADEA, courts look to whether the person who was chosen for the position was "substantially younger" than the plaintiff.[12] *Rouse v. City of New York*, No. 08 Civ. 7419 (HB), 2009 WL 1532054, at *6 (S.D.N.Y. June 2, 2009) (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006)).

Here, the fourth element is satisfied because Dunne is white and was in his early fifties when he was offered the custodial position over Plaintiff, thus giving rise to an inference of discrimination. *See, e.g.*, *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 507 (S.D.N.Y. 2010) (fourth element established where plaintiff was replaced by someone twelve years younger); *see also Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 579 (S.D.N.Y. 2008) (promotion

---

[12] In *O'Connor v. Consolidated Coin Caterers Corporation*, the Supreme Court explained that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that the [person chosen for the position] is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class," meaning someone under the age of forty. 517 U.S. 308, 313 (1996); *see also Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78-79 (2d Cir. 2005) (explaining how the differences between the ADEA and other employment discrimination statutes, such as Title VII, alter the showing that is required to satisfy the fourth element of a *prima facie* case).

of employee fourteen years younger than plaintiff satisfied fourth element of *prima facie* case (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000))).

### B. Legitimate, Non-discriminatory Reason for Decision

Because Plaintiff has stated a *prima facie* case of discrimination on the basis of age, race and color, the burden shifts to Defendant to demonstrate a legitimate, non-discriminatory reason for its decision to hire Dunne rather than Plaintiff for the custodial job.  Defendant states that Dunne was chosen because he had worked as a custodian for ten years and spent approximately five of those years as a custodian for a *religious* school.  Def.'s 56.1 Stmt. ¶¶ 19-20; Def.'s Mem. L. 8-9; Ex. A, 76:20-24, 77:13-20, 99:1-25.  Therefore, by virtue of his experience, Dunne was better able to understand "the workings of a religious school."  Ex. A, 77:14-15.

According to Mulligan's testimony at the SDHR hearing, after they had interviewed Dunne, he and Unger determined that Dunne had "qualifications more suitable to the job."  Ex. A, 103:17-25 – 104:1-12.  The rationale proffered by Defendant effectively satisfies its burden of production in articulating a legitimate, non-discriminatory reason for choosing Dunne for the custodial position over Plaintiff.  *See, e.g.*, *Schwartz v. York Coll.*, 06 Civ. 6754 (RRM) (LB), 2011 WL 3667740, at *6 (E.D.N.Y. Aug. 22, 2011) (finding a legitimate, non-discriminatory basis for hiring individual over plaintiff when individual's "previous work experience matched the demands of the position more closely than Plaintiff's.").

### C. Pretext

Because Defendant has articulated a legitimate, non-discriminatory reason for its decision to offer the custodial position to Dunne, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered non-discriminatory reason was pretextual—that is, that age, race and color discrimination were the real reasons for the decision not to offer the position to Plaintiff.  Under

Title VII, it is sufficient for Plaintiff to show that race and color discrimination was a substantial or motivating factor for the adverse employment action, even if it was not the only reason for Defendant's decision.  42 U.S.C. § 2000e–2(m); *see also Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011).  For his ADEA claim to survive summary judgment, Plaintiff must show "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [Defendant's] decision."  *Gorzynski*, 596 F.3d at 107.

As Plaintiff has not submitted a memorandum of law in connection with his opposition to Defendant's motion, he has made no explicit attempt to satisfy his burden at this third stage of the *McDonnell Douglas* test—he has proffered no facts that would tie his race, color or age to Defendant's action.  However, mindful of the Plaintiff's *pro se* status, the Court has reviewed the record and submissions thoroughly to determine if Plaintiff can produce evidence of pretext.  After a careful review of the evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court finds no evidence that would support a jury's finding that Defendant's proffered reason for not hiring Plaintiff was a pretext for unlawful discrimination.

Plaintiff appears to base his pretext argument on the following claims:  (1) the SDHR's initial determination of March 8, 2008 that there was probable cause to believe that Defendant engaged in an unlawful discriminatory practice, Compl., at 22; *see generally* Pl.'s 56.1 Response, ¶ 20 (mentioning the phrase "probable cause" and attaching the SDHR's determination after investigation); (2) Plaintiff was not given a job application to complete when he was interviewed for the custodial position, "as if [Unger and Mulligan's] minds were made up when they saw me, and found out my age[,]" Compl., at 15; (3) Plaintiff's confusion as to why Defendant would have called him for an interview if it had determined, based on his resume, that

he was overqualified for the position, Ex. A., 48:12-20; (4) the fact that Plaintiff was called for

an interview based on a resume that did not identify his age, and then he did not receive the

position once he voluntarily revealed his age to Defendant, *id*. 18:12-25 – 19:1-19; (5) Plaintiff's

"intuition" that he was being discriminated against based on his age and color, *id*. 17:20-25 –

18:1-11; and (6) Unger's statement to Plaintiff that he came in "high second" for the position,

which Plaintiff found highly insulting.  Def.'s 56.1 Stmt. ¶¶ 21-22.

As to Plaintiff's first assertion, the SDHR's initial determination is not admissible and

was, in any event, followed by a full hearing before an ALJ.  At that hearing, Plaintiff testified,

was represented by counsel, and had a full opportunity to cross-examine Defendant's witnesses.

The ALJ found that there was no evidence of discrimination on the part of Defendant and

furthermore, "Complainant [could not] establish that Respondent's stated reason for hiring

Dunne was pretextual."  Ex. G at 5-6.  The ALJ's decision was then adopted by the SDHR

Commissioner and Plaintiff did not appeal the SDHR Commissioner's order.  Def.'s 56.1 Stmt.

¶¶ 31-32.

Plaintiff's second assertion, that he was not provided with a formal job application

because of his age, was expressly contradicted by admissible evidence that it is KTI's practice to

require a formal job application only after a candidate is hired.  *Id*. ¶¶ 9-10.

Plaintiff's third basis for pretext, that Defendant should not have asked him to interview

for the job if he was seen as overqualified, while it has some logical force, is effectively rebutted

by admissible and uncontroverted evidence that Defendant decided to interview the Plaintiff

because as of the date he submitted his resume, Defendant "did not have any viable candidates [for the position]." Ex. A, 102:15-17.[13]

Plaintiff's fourth rationale for pretext, that Plaintiff was called for an interview based on a resume that did not identify his age, and then he did not receive the position once he voluntarily revealed his age to Defendant, has no basis in any admissible evidence before this Court. Plaintiff merely cites past job-seeking experiences where he believes he was granted interviews when he omitted his age from his resume. *Id.* 18:12-25 – 19:1-19.  Even accepting Plaintiff's past experiences as true, the Court cannot rely on Plaintiff's conjecture that Defendant decided not to hire him when it learned Plaintiff's age. *Schwartz,* 2011 WL 3667740 at *8 ("Only evidence 'that allows for a reasonable inference of discrimination,' not merely that which 'gives rise to speculation and conjecture' fulfil[l]s the Plaintiff's burden.") (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("[P]laintiffs' mere conjecture that [defendant's] explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").  Moreover, even assuming arguendo that Defendant did consider Plaintiff's age, Plaintiff cannot carry his burden on the ADEA claim of establishing that age was the "but for" reason of his failure to receive the job offer.  Defendant has proffered admissible evidence of a variety of factors that rendered Dunne the more appropriate candidate, including more relevant job experience at a similar institution.

The Court also will not rely on Plaintiff's "intuition" that he was discriminated against by Defendant.  At the SDHR hearing, when asked why he felt that he had been discriminated

---

[13] Relatedly, Plaintiff appears to suggest that Defendant "dumbed down" the custodial position description during his interview.  The Court does not address this argument as Plaintiff admitted at the SDHR hearing that he did not believe that the position was dumbed down to keep him from getting the job. Ex. A, 48:12-20.

against based on his age and color, Plaintiff testified, "I can't take osmosis into a Court of law. Just like women ha[ve] their intuition, you can't take that into a Court of law."  Ex. A, 17:20-25 – 18:1-11.  Plaintiff's "mere conjecture" is insufficient to rebut Defendant's non-discriminatory rationale.  *Branson*, 853 F.2d at 772.

With respect to the sixth proffered basis for pretext, Unger's "high second" comment, Plaintiff strongly suggests, but does not, and cannot, point to any evidence indicating that this comment demonstrates race, color or age bias.  In fact, the admissible evidence shows that Unger and Mulligan were "impressed" with Plaintiff's credentials.  Def.'s 56.1 Stmt. ¶ 16.  As noted by Defendant, "Plaintiff does not present any evidence to call this entirely logical explanation of Ms. Unger's statement into question."  Def.'s Mem. L. at 12.

Finally, the Court notes that Defendant submitted evidence that Dunne's three immediate predecessors as custodial assistant were two African-American males and a Hispanic male, with the Hispanic male working for KTI for sixteen years until he was approximately seventy years old, Def.'s 56.1 Stmt. ¶ 24; Ex. A, 93:13-16, and Mulligan's predecessor was African-American and retired in his sixties after working for KTI for twenty-five years.  Def.'s 56.1 Stmt. ¶ 25.  Plaintiff has failed to refute, or even address, this evidence, which weighs against finding that Defendant's articulated non-discriminatory reason for hiring Dunne was pretextual.  *See Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 465 (2d Cir. 2011) (affirming summary judgment where Defendant submitted evidence that it employed seven individuals who were age forty or greater when they assumed the position which plaintiff was denied); *Williams v. Mead Coated Board, Inc.,* 836 F.Supp. 1552, 1571 (M.D.Ala. 1993), *aff'd*, 41 F.3d 668 (11th Cir. 1994) (granting summary judgment in race discrimination case because defendant "promoted a number of black employees to positions which plaintiffs, who are also

23

black sought" and, in that situation, "the court cannot accept discrimination as a plausible explanation for [defendant's] decision.") (citations and quotation marks omitted).

Examining the record as a whole, Plaintiff has failed to offer any evidence that Defendant's decision was actually motivated by discriminatory intent.  Plaintiff's argument is simply a conclusion:  he is African-American and was, at the time of the relevant hiring decision, sixty-four years old; Defendants chose a younger, white candidate for the position rather than Plaintiff; therefore, Plaintiff must have been passed over because he is a sixty-four year old African-American.  This is insufficient to defeat a summary judgment motion.  *Farias v. Instructional Sys.*, 259 F.3d 91, 99 (2d Cir. 2001) (affirming summary judgment where "[p]laintiffs failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by [defendant], let alone evidence that could reasonably support a verdict in their favor.").

 "[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010).

Accordingly, even after drawing all reasonable inferences and resolving all ambiguities in Plaintiff's favor and interpreting Plaintiff's pleadings and opposition papers to state the strongest arguments they suggest, there is simply nothing connecting Plaintiff's age, race or color to Defendant's decision to offer the custodial position to Dunne.

**V. Dismissal of Plaintiff's NYHRL and NYCHRL Claims**

Finally, the Court dismisses Plaintiff's NYSHRL and NYCHRL claims based on Plaintiff's election of remedies.  Plaintiff chose to pursue his discrimination claims by filing a

claim with the SDHR. Def.'s 56.1 Stmt. ¶ 27. The SDHR held an ALJ hearing and dismissed

Plaintiff's claims in a Final Order of the SDHR Commissioner, which Plaintiff did not appeal.

*Id.* ¶¶ 30-32. Once NYHRL and NYCHRL claims are brought before the SDHR, they "may not

be brought again as a plenary action in another court . . . Furthermore, once a plaintiff brings a

case before the [SDHR], he or she may appeal only to the Supreme Court of the State of New

York." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Thus,

Plaintiff cannot relitigate his claims before this Court. *Id.*

## VI. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is

GRANTED. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from

this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for

the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The

Clerk of the Court is respectfully directed to terminate this motion (Doc. 19), enter judgment in

favor of Defendant, and close this case.

It is SO ORDERED.

Dated:     January 9, 2013
           White Plains, New York

_____
Edgardo Ramos, U.S.D.J.